UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THERON NEWKIRK,

                                Plaintiff,

                        - against -

THE CITY OF NEW YORK, LT. ATKINSON,
SGT. SHAFIDIYA, SGT. FIGLIUDO, and JOHN DOES A-F
the name "Doe" being fictitious and intended to represent those
police officers, detectives and supervisors who acted or
commanded the defendants' actions to falsely arrest, falsely
imprison, use excessive force, and act with deliberate
indifference towards Plaintiff,

                                Defendants.
------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

21 CV 6635 (BMC)

      Plaintiff, THERON NEWKIRK, by his attorneys, MANGAN LOUIS LLP, for his Complaint against the Defendants, alleges, at all times material herein, that:

NATURE OF THE ACTION

(1)     Plaintiff Theron Newkirk brings this Section 1983 Civil Rights Action against NYPD officers and supervisors for false arrest, false imprisonment, and excessive force and for deliberate indifference towards his medical care and health while in the custody of NYPD Officers in violation of the Fourth, Eighth and Fourteenth Amendments consistent with the NYPD's policies and practices to shackle and detain persons for whom to the NYPD has no probable cause or other justification to detain or arrest, and act deliberately indifferent to hospitalized prisoners in the custody of the NYPD by generally depriving hospitalized prisoners from receiving reasonable and adequate medical care. On or about November 29, 2018, Theron Newkirk was recovering from surgery at Elmhurst Hospital when NYPD officers handcuffed him to his bed for approximately twelve days. He was not charged with a crime, nor was he under investigation, nor could he leave the hospital on his own, because he was paralyzed from

the chest down. The actions of these defendants also prevented him from receiving full medical care, and Theron developed Stage IV pressure ulcers and osteomyelitis.

## VENUE & JURISDICTION

(2)     Jurisdiction is founded on the existence of a federal question, and a question arising under an Act of Congress, U.S.C., Title 42, Sec. 1983, as hereinafter more fully appears.

(3)     Venue is properly laid in this District under 28 U.S.C. Section 1391(b), this being the District in which the claim arose.

## PARTIES

(4)     Plaintiff THERON NEWKIRK is a resident of the State of New York, Queens County.

(5)     Defendant CITY OF NEW YORK (hereinafter referred to as "City") is, and was at all times material herein, a municipal corporation formed pursuant to the laws of the State of New York and was the employer of the Defendant agents and officers.

(6)     Defendant Lieutenant Atkinson was, upon information and belief, an NYPD Lieutenant and supervisor at the 110 Precinct at the time Theron's false arrest between approximately November 28, 2018 and December 12, 2018, and was responsible for ordering, or enforcing the orders of others, that NYPD officers and supervisors unlawfully arrest and detain Theron, use excessive force in the detention, and deprive Theron of reasonable and adequate medical care.

(7)     Defendant Sergeant Shafidya was, upon information and belief, an NYPD Sergeant and supervisor at the 110 Precinct at the time Theron's false arrest between approximately November 28, 2018 and December 12, 2018, and was responsible for ordering, or enforcing the orders of others, that NYPD officers and supervisors unlawfully arrest and detain Theron, use excessive force in the detention, and deprive Theron of reasonable and adequate medical care.

(8)     Defendant Sergeant Figliudo was, upon information and belief, an NYPD Sergeant and supervisor at the 110 Precinct at the time Theron's false arrest between approximately November 28, 2018 and December 12, 2018, and was responsible for ordering, or enforcing the orders of

others, that NYPD officers and supervisors unlawfully arrest and detain Theron, use excessive force in the detention, and deprive Theron of reasonable and adequate medical care.

(9)     Defendants "John Does" are New York City Police Officers and Supervisors, and other employees of the New York City Police Department, who issued orders to falsely arrest and detain plaintiff, and those who did falsely arrest, imprison and detain Plaintiff.

(10)     All individual defendants are being sued in their individual capacities, and all were acting under the color of law at all times alleged herein.

(11)     The City at all times material herein, through the NYPD, was responsible for the supervision, discipline, retention and promotion of the police officers, sergeants, detectives, supervisors, agents and/or employees of the New York City Police Department, and for the policies and procedures that are used to police its citizens, including policies and widespread practices that required or allowed, NYPD personnel to falsely arrest, detain, shackle, and isolate persons who are receiving medical attention at hospitals within the City of New York. The City at all times material herein.

## FACTS

(12)     On or about November 28, 2018, Theron Newkirk, while on the street in Queens, suffered gunshot wounds to his neck and chest, causing irreversible spinal cord injuries.

(13)     Emergency Medical Services (EMS) operators found Theron, lying on the street, and delivered him to Elmhurst Hospital. Upon information and belief, there were no police on the scene of plaintiff's injury, nor was plaintiff the subject of any criminal investigation by the police, either before or after he was injured.

(14)     Upon admission to Elmhurst Hospital, Theron underwent surgery to remove the bullets that had entered his body and to close his wounds.

(15)     Upon information and belief, the NYPD were alerted to the occurrence of the shooting sometime after Theron was addressed by EMS. Upon information and belief, the NYPD wanted

to obtain information from Theron related to the shooting, and therefore, a John Does commanding officer at the 110th Precinct ordered that Theron be held in custody at Elmhurst Hospital, in order to gather information about the shooter and the events. Upon information and belief, a commanding officer or some other supervisor, issued an order that NYPD officers and detectives go to Elmhurst Hospital in order to confine and detain Theron in his hospital bed, and to prevent family members or others from meeting with Theron unless approved by the NYPD to meet with him.

(16)    Upon information and belief, defendant NYPD officers and detectives sought to pressure Theron to testify against the shooter and held him in confinement, while he was recovering from his injuries, for the purpose of compelling his testimony. Upon information and belief, NYPD employs this practice regularly, by using force and threat of detention against hospitalized individuals believed to have information that could be used against other persons. In these situations, the NYPD treats uncharged persons, such as Theron, for whom the NYPD has no probable cause to arrest, as "Hospitalized Prisoners" according to the Patrol Guide section for the safeguarding of hospitalized prisoners who have been arrested by members of the service.

(17)    Theron's family members were required go the 110th Precinct and submit "Hospitalized Prisoner" forms to be approved to visit Theron at Elmhurst while he was held in police custody.

(18)    On or about December 10, 2018, Theron's family members had a Legal Aid attorney write a letter on behalf of Theron to the NYPD demanding that they release him from the shackles. On information and belief, the letter was submitted to the NYPD Legal Department at 1 Police Plaza, and on or about December 11, 2018, in response to the Legal Aid letter, the defendants released Theron from the shackles.

(19)    Upon information and belief, in this case, the defendants were following established

NYPD policies through the Patrol Guide, Section 210-02 for "Hospitalized Prisoners" which details the manner in which "arrested" persons are guarded and restrained while hospitalized. However, the NYPD has a broader practice than what is set forth in Patrol Guide 210-02 that includes detaining, handcuffing, leg shackling and guarding persons who are not charged or considered by the NYPD, in their own parlance, to be "under arrest." This practice is such that NYPD supervisors order that detectives, patrol officers and other lower ranked officers, detain and treat hospitalized persons with information sought by the NYPD to be treated as prisoners, and therefore to detain these other persons with handcuffing, leg shackling and guarding by NYPD members of the service.

(20)    According to certain members of the Legal Aid of New York City, the NYPD practice of detaining and "arresting" uncharged hospitalized persons is common and widespread. However, statistics, though likely available to the NYPD, are not easily obtainable by Legal Aid due to the fact that the uncharged prisoners are not usually being represented by legal counsel because they are not "under arrest", they are not charged, and they are not arraigned.

(21)    Upon information and belief, in this case, the defendants were also following a second practice, or policy, that prioritizes the restraint of the hospitalized prisoner over the prisoner's medical needs to such an extent that the prisoners in restraints are endangers by the NYPD officers and are deprived of reasonable and necessary medical care. NYPD officers, through training, practice, policy and direct orders from their commanding officers, are taught, instructed and expected to interfere with the medical care of the prisoners to such an extent as to endanger the health of these prisoners. This practice or policy to endanger hospitalized prisoners violates the constitutional rights of these prisoners through deliberate indifference to medical care and treatment.

(22)   As examples of this NYPD practice of interfering with the health and safety of hospitalized prisoners through restraints such as handcuffs and leg shackles, a woman who was pregnant and going into labor while under arrest, was restrained by handcuffs and legal shackles while in labor, and then again, post-partum, immediately after giving birth she was shackled to her bed. *See*, *e.g.*, *Jane Doe v. The City of New York, et al.*, 18 cv 11414 (S.D.N.Y)(AKH). In another reported case involving another pregnant woman, who was 35 months pregnant and experiencing a medical crisis, was shackled for 72 hours during that crisis by NYPD in the Bronx, in July 2015. *See* Index 303220/16.

AS AND FOR A FIRST CAUSE OF ACTION

(False Arrest and False Imprisonment Under the 4th and
14th Amendments of the U.S. Constitution and 42 U.S.C. § 1983)

(23)   Plaintiff realleges the facts stated in all paragraphs above as if stated fully herein. Plaintiff was falsely and unlawfully arrested, imprisoned, detained, searched and deprived of liberty against his will.

(24)   Theron Newkirk was arrested and held against his will, while at Elmhurst Hospital, from approximately November 29, 2018 to December 11, 2018.

(25)   Defendants had no probable cause to arrest Theron, nor did they consider Theron to be a person of interest, nor was Theron under investigation.

(26)   Defendants did not charge Theron with a crime and were aware that they had no probable cause to arrest or detain Theron.

(27)   Defendants violated the protections guaranteed this plaintiff as a citizen of the United States by arresting, detaining, and imprisoning without probable cause or other justification.

(28)   Defendants had no probable cause to used excessive force in handcuffing him to prevent his movement when he was not in a position to move.

(29)   Defendants committed this false and unlawful arrest, imprisonment, detention, and deprivation of liberty while knowing that they did not have probable cause, knowing that these

acts were unlawful and knowing that these acts were without justification and defendants engaged in these acts to intentionally violate plaintiff's rights, privileges and immunities secured by the United States Constitution, or engaged in these acts with reckless disregard to the plaintiff's rights, privileges and immunities secured by the United States Constitution.

(30) All Defendants acted under color of law. Defendants apprehended plaintiff based upon improper reasons.

(31) The City of New York violated protections guaranteed plaintiff as a citizen of the United States by maintaining a policy or practice to deny citizens their constitutional protections without due process.

(32) The City of New York violated protections guaranteed plaintiff as a citizen of the United States by supervising the defendant police officers and detectives in such a manner as to require them to violate the plaintiff's rights.

(33) The City of New York, through its policymakers within the NYPD, explicitly or tacitly approved the unconstitutional practices described above. In maintaining the "policy" or "procedure" regarding the use of restraints on uncharged hospitalized persons, the City intentionally violated the rights of uncharged persons generally, and Plaintiff specifically.

(34) The City of New York was aware of and deliberately indifferent to the fact that its "policy" or "procedure" would result in the deprivation of Plaintiff's and others' constitutional rights. At all relevant times, Defendant City was aware that the use of restraints on uncharged hospitalized persons for whom the NYPD had no right to detain or use restraints or arrest.

(35) Defendant Officers acted consistently with and pursuant to the "policy" or "procedure" or "practice when they engaged in the conduct set forth above.

(36) All defendants, acting under color of state law, violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983 and are liable for said damage and injuries.

## AS AND FOR A SECOND CAUSE OF ACTION

(Use of Excessive Force in Violation of
the 4th and 14th Amendment and 42 U.S.C. § 1983)

(37)    Plaintiff realleges the facts stated in all paragraphs above as if stated fully herein.

(38)    Defendant officers, detectives and supervisors deliberately restrained Plaintiff by shackling him against his will to a hospital bed for approximately twelve (12) days, in contravention of the medical professionals and common sense. Plaintiff had not resisted the police officers, nor had he threatened to use any force, and was, for much if not most of the time, unconscious while he was restrained. Plaintiff posed no threat to the officers and the restraints used against him constitute excessive force.

(39)    All Defendants acted under color of law.

(40)    The City of New York violated protections guaranteed plaintiff as a citizen of the United States by maintaining a policy or practice to deny citizens their constitutional protections without due process.

(41)    The City of New York violated protections guaranteed plaintiff as a citizen of the United States by instituting a police and procedure to restrain, confine, and use force against citizens such as plaintiff in deprivation of their rights ensured under the Fourth and Fourteenth Amendments of the Constitution.

(42)    All defendants are liable for said damage and injuries pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

(Deliberate Indifference of Plaintiff's Medical Needs
While in Custody in Violation of the 8th and 14th Amendment
and 42 U.S.C. § 1983)

(43)    Plaintiff realleges the facts stated in all paragraphs above as if stated fully herein.

(44)    Defendant officers, detectives and supervisors deliberately held Theron in custody, and in contravention of his medical needs, while he was attempting to recuperate from life threatening and serious injuries that left him paralyzed and unable to care for himself.

(45)    Upon information and belief, these defendant officers, detectives and supervisors, were well aware of Theron's post gunshot and post surgical medical conditions and following surgery, and realized the substantial risk of serious harm that was caused by shackling him to his hospital bed, and that this restraint would prevent him from receiving full and adequate care from the Elmhurst Hospital staff.

(46)    Upon information and belief, Elmhurst doctors, nurses and other hospital officials, informed the defendants that Theron could not receive complete care while he was handcuffed to the bed, yet they ignored these doctors, nurses and other hospital officials.

(47)    The City of New York, through its policymakers within the NYPD, explicitly or tacitly approved the unconstitutional practices described above. In maintaining the "policy" or "procedure" regarding the use of restraints on Hospitalized Prisoners pursuant to the written policy of Patrol Guide 210-2, as applied in practice, the City intentionally violated the rights of Hospitalized Prisoners generally, and Plaintiff specifically. The City, through the acts of its NYPD employees was deliberately indifferent when elevating the use of restraints as a higher priority than the health of the Hospitalized Prisoners, as they did with Theron, and to interfere with the medical care of those prisoners, to the constitutional rights of Hospitalized Prisoners generally, and Plaintiff specifically.'

(48)    Defendant City was aware of and deliberately indifferent to the fact that its "policy" or "procedure" and its use and practice would result in the deprivation of Plaintiff's and others' constitutional rights. At all relevant times, Defendant City was aware that the use of restraints and shackles on Hospitalized Prisoners would likely interfere with their medical care, but failed to adequately train or supervise its officers in the use of these restraints on Hospitalized Prisoners.

(49)    Defendant Officers acted consistently with and pursuant to the "policy" or "procedure" or direct orders of their supervisors, who themselves acted on orders and NYPD "policy" or "procedure" when they engaged in the conduct set forth above.

(50)    Alternatively, Defendant City failed to adequately train Defendant Officers on the legal

9

proscription against shackling Hospitalized Prisoners such as Theron Newkirk, who do not pose a threat to escape, and whose restraints cause a greater harm and risk to their heath than benefit to the NYPD officers.

(51) Defendant City was deliberately indifferent to the need for such training, as evidenced in part by a prior lawsuits involving unconstitutional shackling of a pregnant women, and by the numerous NYPD officers who believed the shackling of Theron was justified.

(52) Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment and pray for the following relief, jointly and severally, against the Defendants:

(a) special and compensatory damages in the amount of five-million dollars ($5,000,000) dollars;

(b) punitive damages in the amount of five-million ($5,000,000) dollars;

(c) reasonable attorney's fees and the costs of litigation of this action pursuant to 42 U.S.C. § 1988; and

(d) such other and further relief as to this Court seems just and proper.

Dated: New York, New York
April 1, 2022

                                     **MANGAN LOUIS LLP**

                                     /s/
                                  _____
                                  By: Michael P. Mangan (MM-5773)
                                  *Attorneys for Plaintiff*
                                  80 Maiden Lane, Suite 304
                                  New York, NY 10038
                                  (212) 248-2170